IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

CLINTON DEONARD DUDLEY,                ) Civil Action No. 3:22-CV-00170-CBB
                                       )
              Plaintiff,               )
                                       )
       vs.                             ) United States Magistrate Judge
                                       ) Christopher B. Brown
COUNSELOR SMICK, COUNSELOR             )
FOX,  LIEUTENANT FOX, WARDEN           )
CHRISTIAN M. SMITH,  OFFICER           )
LEAVERNIGHT,  OFFICER TURK,            )
LIEUTENANT ANDERSON,                   )
LIEUTENANT APPLY,  DELOZIER,           )
ACCOUNTING; 1ST DEPUTY                 )
WARDEN  PATTERSON, 2ND                 )
DEPUTY WARDEN  DESCAVISH,              )
2ND DEPUTY WARDEN  ROZUM,              )
                                       )

              Defendants,

**MEMORANDUM OPINION[1]**
**ON MOTION FOR SUMMARY JUDGMENT ECF No. 51**

## I.    Introduction

Plaintiff Clinton Deonard Dudley, proceeding pro se and *in forma pauperis*,

initiated this 42 U.S.C. § 1983 civil action against Defendants Jeremy Smick,

Rebecca Fox, Corey Fox, Christian M. Smith, David Levernight, Erin Turek,[2] Mark

Anderson, Brandon Appley, Katie Delozier, William Patterson, Craig Descavish,

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

[2]    Defendants clarify that the correct spelling is Turek not Turk, as she was referred to in the Amended Complaint.  ECF No. 52 at n.1.  This Opinion will refer to her as Defendant Turek.

and George Rozum.  Three claims survived motions to dismiss.  The first was for excessive force related to an alleged altercation where Dudley refused to return to his cell and was tackled and cuffed by corrections officers.  The second was for conditions of confinement by his being placed in a cell for six days that was cold. The third was related to access to the courts as jail staff allegedly forced him to choose between calling his family or a lawyer referral service about a civil forfeiture case.  This court has subject matter jurisdiction under 28 U.S.C. § 1331.

Pending before the Court is Defendants' Motion for Summary Judgment.[3] ECF No. 51.  Notably, Dudley filed a Response to Defendants' Motion for Summary Judgment but did not file either an Affirmative or Responsive Statement of Facts. This Motion is fully briefed and ripe for consideration.  ECF Nos. 57, 59.

For the reasons below, Defendants' Motion for Summary Judgment is granted.  ECF No. 51.

## II.    Dudley's Violation of Local Rule 56.C.1

Before addressing the factual background underlying this action, the Court notes that Dudley has failed to properly respond to Defendants' Statement of Material Facts (ECF No. 53), as required by Local Rule 56.C.1.  Local Rule 56.C.1 requires non-moving parties to a motion for summary judgment to file a responsive

---

[3]    At ECF No. 51, Defendants filed a pleading titled "Motion to Dismiss Plaintiff's Amended Complaint."  It is clear from the record that this is in fact a Motion for Summary Judgment, not a Motion to Dismiss.  The failure to call it a Motion for Summary Judgement is nothing more than a clerical error as, most notably, Defendants filed a pleading titled "Brief in Support of the Motion for Summary Judgment" the same day. ECF No. 52.  Additionally, a Motion to Dismiss was previously filed at ECF No. 24 and resolved by Memorandum Opinion at ECF No. 32.  Given this, it is evident at this stage of the litigation that what was filed at ECF No. 51 was a Motion for Summary Judgment and it will be treated as such.

concise statement.  LCvR 56.C.1.  A plaintiff must: respond to each numbered paragraph in the movant's concise statement; admit or deny the facts contained in the movant's concise statement; set forth the basis for denial if any fact within the movant's concise statement is not entirely admitted by the non-moving party, with appropriate citation to the record; and set forth, in separately numbered paragraphs, any other material facts at issue.  *See* LCvR 56.C.1.  Courts in this district require strict compliance with the provisions of Local Rule 56.  *See, e.g.*, *Byron v. Columbia Gas of Pennsylvania,* No. 2:21-CV-01365-CCW, 2022 WL 17406052, at *1 (W.D. Pa. Dec. 2, 2022), *aff'd,* No. 22-3408, 2023 WL 8663876 (3d Cir. Dec. 15, 2023); *Angelopoulos v. HDR Eng'g, Inc.*, No. 2:19-CV-01578-CCW, 2021 WL 3056205, at *2 (W.D. Pa. July 20, 2021); *First Guard Ins. Co. v. Bloom Services, Inc.*, 2018 WL 949224, at *2-3 (W.D. Pa. Feb. 16, 2018); *Hughes v. Allegheny County Airport Auth.*, 2017 WL 2880875, at *1 (W.D. Pa. July 6, 2017).

A non-moving party "faces severe consequences for not properly responding to a moving party's concise statement."  *Hughes*, 2017 WL 2880875, at *1.  Any alleged material facts "set forth in the moving party's Concise Statement of Material Facts . . . which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."  LCvR 56.E.  While courts provide some leniency to pro se litigants when applying procedural rules, the Court "is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores for the [pro se

litigant] that counsel would normally carry out." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 244 (3d Cir. 2013) (quoting *Pliler v. Ford*, 542 U.S. 225, 231 (2004)). Nor may pro se litigants ignore procedural rules that apply to parties assisted by counsel. *McNeil v. United States*, 508 U.S. 106, 113 (1993) (explaining "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Dudley had actual knowledge of these requirements and was informed by Court Order that statements of material fact "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." ECF No. 49 at 3.

Consequently, the Court will treat Defendants' Statement of Material Facts (ECF Nos. 53) as undisputed but will nonetheless consider any contradictory facts Dudley asserts if they are properly supported by the record. *Whetstone v. Fraley & Schilling Trucking Co.*, No. 22-cv-1018, 2022 WL 4533847, at *2 (3d Cir. Sep. 28, 2022). *See also Boyd v. Citizens Bank of Pa., Inc.*, 2014 WL 2154902, at *3 (W.D. Pa. May 22, 2014) ("To the extent Plaintiff's statement of 'fact' specifically controverts Defendant's, the Court will consider these facts in determining" summary judgment).

## III.  **Factual Background**

The following facts are undisputed unless otherwise noted. At all relevant times, Dudley was a pretrial detainee at the Cambria County Prison. ECF No. 53 at ¶¶ 1-2.

On February 11, 2022, Dudley was using a prison phone when a staff member asked him to get off and go back to his cell in order to mitigate a security issue on the floor. *Id.* at ¶ 4. Dudley refused multiple requests to go back to his cell. *Id.* at ¶¶ 5-6. He was then ordered to "cuff up," which he refused and tied a towel around his face to avoid the Corrections Officer. *Id.* at ¶ 7. Dudley refused multiple follow-up requests from Defendants to comply. *Id.* at ¶ 8. He was then "taken to the ground to be cuffed" by staff. *Id.* at ¶ 9. He told staff: "[If] I catch you guys on the street, I am going to get you guys on the street." *Id.* at ¶ 14. In his Amended Complaint, Dudley also alleges he was maced, and Defendants Anderson, Appley, Leavernight, and Turek participated in this encounter. ECF No. 17 at 8.

Dudley was then escorted to the medical clinic for an evaluation on February 11, 2022. ECF No. 53 at ¶ 10. While he was being escorted, he threated the escorting officers and told them he was going to "kill the responding officers" once he was released. *Id.* at ¶ 11. At medical, Dudley refused medical treatment and told the nurse to "get out of my face, bitch." *Id.* at ¶ 10.

That same day he was taken to DHU West and classified as a security risk due to his refusal of medical treatment. *Id.* at ¶ 12. He was placed in DHU West Cell 25, strip searched, and given a paper gown due to his security risk status. *Id.* at ¶¶ 13, 15. From February 11, 2022, until Dudley was taken off security risk status on February 18, 2022, he was given a mattress and blanket at night. *Id.* at ¶ 17. In addition to the mattress and blanket, he was given prison-issued shoes, three pairs of underwear, and three pairs of socks on February 14, 2022. *Id.* at ¶ 16. In

his Brief in Opposition, Dudley alleges the particular DHU cell he was placed in for during those six days had "trouble heating" and was "extremely cold."  ECF No. 57 at 1.  Defendants noted the heating system is run by computer software and is not specific to a single cell but heats an entire unit and staff were not made aware of any "temperature issues" with the cell.  ECF 51-3 at 2-3.

Dudley received a misconduct on February 12, 2022 for these events, and was sanctioned 60 days.  *Id.* at ¶ 19.  On February 16, 2022, he filed a grievance saying he "was taken to the hole by use of force" and he had a "busted lip," his head was pushed into the ground, and felt a knee on his head.  ECF No. 51-1 at 38.  In the grievance, he requested the staff members be suspended and investigated, and that he be given monetary damages for the use of force and for being placed in a cold cell without heat.  *Id.*  Defendant Corey Fox responded on March 9 that "[d]uring the investigation into this matter, it was found that you were not compliant with your move to lock up and resisted the team.  Therefore you had to be physically move[d] to the DHU."  ECF No. 51-1 at 37.

Separately, on April 27, 2022, Dudley filed a grievance alleging he received a forfeiture and condemnation petition from the Attorney General of Allentown, PA on February 24, 2022, seeking to enforce a $13,780 civil forfeiture, but Defendant Smick, a counselor at the Cambria County Prison, told him he could either call his family or a lawyer referral service (not both).  ECF No. 51-1 at 39.  In the grievance, he said he had not been able to call the lawyer referral service despite his request slips and conversation with "Counselors" to do so.  *Id.*  Defendant Smick denied that

Dudley made such a request saying that Dudley had "never mentioned this issue to [him]." ECF No. 53 at ¶ 18 (citing ECF No. 51-1 at 39-42).

Throughout this time, Dudley had an approved list of people he could make telephone calls to and was able to update that list. *Id.* at ¶ 24. He could make telephone calls and could receive and send mail outside of the Cambria County Prison. *Id.* at ¶¶ 25-26. He did not attempt to add either the lawyer referral service or the Allentown Attorney General's Office number to his approved call list, nor were those numbers blocked on his approved call list. ECF No. 51-1 at 4; ECF No. 57 at 2. Dudley did not send any outgoing mail to either the lawyer referral service or to the Allentown Attorney General's Office, though he did receive mail from the Attorney General's Office months later in June and August of 2022. ECF No. 51-1 at 30-36; ECF 57-1.

## IV.    Standard of Review

The standard for assessing motions for summary judgment is well-settled. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146

(3d Cir. 2016) (cleaned up). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could hold in the nonmovant's favor with respect to that issue. *Id*.

This standard is somewhat relaxed with respect to pro se litigants. *Simmons v. Gilmore*, No. 2:17-CV-00996, 2021 WL 1215773, at *8 (W.D. Pa. Mar. 31, 2021) (citing *Anderson*, 477 U.S. at 256). Where a party is representing himself pro se, the complaint is to be construed liberally. *Renchenski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010). A pro se plaintiff may not, however, rely solely on his complaint to defeat a summary judgment motion. *See, e.g.*, *Anderson*, 477 U.S. at 256 ("Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). At the summary judgment stage of the proceedings, the Court need not credit bald assertions or legal conclusions unaccompanied by evidentiary support. *Jones*, 214 F.3d at 407. "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (citation omitted).

## V.    Discussion

In their motion, Defendants first seek summary judgment for Defendants Rebecca Fox, Corey Fox, Delozier, Patterson, Descavish, and Rozum because Dudley

stated he has "nothing" to support any civil rights claim against them.  ECF No. 52 at 2.

Defendants next move for summary judgment on the grounds that Dudley has failed to establish Constitutional Claims Under 42 U.S.C. § 1983 for:

    i.    Excessive force as to Defendants Anderson, Appley, Levernight, and Turek;

    ii.    Conditions of confinement as to Smith, Turek, Anderson, and Appley; and

    iii.    Failure to access counsel as to Smick.

*Id.*  Alternatively, Defendants argue they are entitled to qualified immunity.  *Id.* These arguments are addressed in turn.

### a. Defendants Rebecca Fox, Corey Fox, Delozier, Patterson, Descavish, and Rozum

Defendants first move to have Defendants Rebecca Fox, Corey Fox, Delozier, Patterson, Descavish, and Rozum dismissed from the case because Dudley himself stated he has "nothing" to support his claims against them.  ECF No. 53 at ¶ 3; ECF No. 52 at 2.  Dudley listed these Defendants in his Amended Complaint but did not specifically connect them to his allegations of excessive force, conditions of confinement, or access to the courts.  *See generally*, ECF No. 17.  In his Opposition, Dudley did not address the excessive force claim at all – as to the remaining claims he made no reference or clarification as to what claims he was bringing against these specific Defendants nor addressed their arguments for summary judgment. *See generally*, ECF No. 57.

During discovery, Defendants requested information from Dudley in an attempt to clarify what claims he was bringing against them.  They asked Dudley

via interrogatory: "As to each of the individuals listed below, state in great detail all the facts . . . that you believe support a violation of your constitutional rights."  ECF No. 51-2 at ¶ 42.  While Dudley responded with details about some Defendants, as to Defendants Rebecca Fox, Corey Fox, Delozier, Patterson, Descavish, and Rozum, Dudley wrote the word "Nothing" under their names in the list.  *Id.*[4]  Dudley makes no further reference to this nor does he dispute Defendants characterization of his "nothing" in his Opposition brief.  ECF No. 57.

As it is undisputed that Defendants Rebecca Fox, Corey Fox, Delozier, Patterson, Descavish, and Rozum were not involved in Dudley's claims of excessive force, conditions of confinement, and access to courts, summary judgment is granted as to these Defendants.  *See Chruby v. Bearjar*, No. 24-1200, 2025 WL 325751, at *2 (3d Cir. Jan. 29, 2025) (upholding District Court's granting of summary judgment as to two defendants who were "not involved" in prisoner-plaintiff's allegations).

### b.  Constitutional Claims Under 42 U.S.C. § 1983

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and

---

[4]      Defendants further support their argument with Affidavits from each of these Defendants except Defendant Delozier.  *See* ECF No. 51-3 at 4 (Descavish); *Id.* at 5 (Corey Fox); *Id.* at 6 (Rebecca Fox); *Id.* at 7 (Patterson); *Id.* at 8 (Rozum).  Additionally, an affidavit from Defendant Wolford indicates that only Levernight, Anderson, Turk, and Appley were present during the "use of force incident" and not Delozier or any of the other named Defendants.  ECF 51-3 at 12-13.  Indeed, Dudley's reference to Delozier is contained in the case caption of the Amended Complaint which suggests he/she is a staff person in Cambria County Prison that works in accounting.  ECF No. 17 at 1.  The only foreseeable claim related to accounting, deductions from inmate account, was previously dismissed by the Court at ECF No. 32.

must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Three such claims survived Defendants' motion to dismiss – excessive force, conditions of confinement, and access to courts. ECF No. 32. Now Defendants move for summary judgement on each.

### i. Excessive Force

Dudley brings an excessive force claim against Defendants Anderson, Appley, Levernight, and Turek, alleging they used excessive force when they "took him to the ground," maced him, and handcuffed him to take him to his cell. ECF No. 17 at 8.[5] Defendants move for summary judgment, arguing they needed to use force because he refused multiple orders to go back to his cell and be "cuffed up," and the use of force was minimal. ECF No. 52 at 6-8. Dudley does not address his excessive force claim in his Opposition brief. ECF No. 57.

A pretrial detainee excessive force claim is governed by the Fourteenth Amendment's Due Process Clause, which "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

---

[5]      It is unclear from the record what specific roles Defendants Anderson, Appley, Levernight, and Turek played in the use of force. This analysis assumes all four Defendants were involved and participating at each step in the altercation with Dudley.

Under the Due Process Clause, pretrial detainees must prove law enforcement had an express intent to punish the detainee and must not have had an "alternative purpose" for the force or that the force "appears excessive in relation to the alternative purpose assigned to it." *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

In considering the reasonableness of the force used against a pretrial detainee, considerations such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting" bear weight. *Kingsley*, 576 U.S. 389, 387 (applying an objective standard for the use of force).

With this standard in mind, a prison's internal security is left to the discretion of prison administrators. *Whitley v. Albers*, 475 U.S. 312, 321 (1986). Prison administrators should be afforded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*. at 321-22 (citations omitted).  Decisions made by prison officials facing disturbances or emergencies affecting prison security should not be second-guessed by courts. *Id*. "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id*. at 319.

The undisputed facts show Defendants are entitled to summary judgment on Dudley's excessive force claim. Those facts show:

- Dudley refused Defendants' multiple orders to get off the phone and go back to his cell. ECF No. 53 at ¶¶ 4-6.

- Dudley refused Defendants' order to "cuff up." *Id.* at 7.

- Dudley tied a towel around his face to avoid Defendants. *Id.* at ¶ 7.

- He refused additional orders by Defendants to comply with the order to "cuff up." *Id.* at ¶ 8.

- He was then "taken to the ground to be cuffed." *Id.* at ¶ 9.

- During the encounter, he told Defendants: "[If] I catch you guys on the street, I am going to get you guys on the street." *Id.* at ¶ 14.

- He refused medical treatment. ECF No. 53 at ¶ 10.

- In a grievance, Dudley said he had a "busted lip," and that his head was pushed into the ground, and that he felt a knee on his head. ECF No. 51-1 at 38. Dudley offered no evidence to corroborate this. ECF No. 57.

Based on the undisputed material facts presented here – as well as Dudley's allegation from the Amended Complaint that he was maced – the Court finds that Defendants are entitled to summary judgment on Dudley's excessive force claim. The undisputed facts show that the force Defendants used was objectively reasonable and not excessive under the circumstances. *Fitzgerald v. Russell*, No. 2:22-CV-853, 2025 WL 406032, at *5 (W.D. Pa. Feb. 5, 2025) (finding no excessive force on summary judgment where defendants used pepper spray on inmate who refused to return to cell); *Brown v. Lardin*, No. CV 21-1407, 2023 WL 6847349, at *7 (W.D. Pa. Oct. 17, 2023), *appeal dismissed*, No. 23-3115, 2024 WL 2813343 (3d Cir. Feb. 28, 2024) (finding no excessive force on summary judgment where plaintiff received minor injuries because force was minimal and necessary to restore order).

First, Defendants needed Dudley to return to his cell to mitigate a security issue on the floor, but Dudley refused multiple orders to go back to his cell and multiple orders to "cuff up."  Second, Dudley's injuries are not known because he refused medical treatment, but at most he alleges he had a "busted lip" (which he offers no evidence to support).  Third, Defendants tried to temper the situation by giving him multiple chances to comply, and only used the force to handcuff Dudley and did not continue force once he had been cuffed.  Fourth, Dudley threatened Defendants with violence.  Finally, Dudley actively resisted multiple sets of orders to comply, and evaded Defendants by tying a towel around himself.

Viewing the facts in the light most favorable to Dudley, no reasonable jury could conclude that Defendants used excessive force against Dudley.  Dudley does not dispute that the actions occurred as Defendants describe.  ECF No. 57. Therefore, summary judgment is granted to Defendants on the excessive force claim.

## ii.  Conditions of Confinement

Defendants next move for summary judgment on Dudley's Conditions of Confinement claim against Defendants Smith, Turek, Anderson, and Appley.  ECF No. 52 at 8.  In the Amended Complaint, Dudley alleges he "was in [a] cold cell for 6 days.  The vents blew out cold air."  ECF No. 17 at 8.

Defendants argue this does not violate the Eighth Amendment's prohibition on cruel and unusual punishment.  ECF No. 52 at 8.  However, as pretrial detainee, Dudley's claims are best analyzed under the Fourteenth Amendment.  *Hubbard v.*

14

*Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (holding pretrial detainee's conditions of confinement claim must be analyzed under the Fourteenth not Eighth Amendment); *Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017) ("[T]he Due Process Clause of the Fourteenth Amendment provides pre-trial detainees at least as much protection . . . as the level guaranteed to prisoners by the Eighth Amendment.").

The Fourteenth Amendment's Due Process Clause protects pretrial detainees against "punishment." *Hubbard*, 399 F.3d at 157-58 (citing *Bell*, 441 U.S. at 535). Under the Due Process Clause, "a detainee may not be punished prior to an adjudication of guilt." *Bell*, 441 U.S. at 535. To determine whether a condition of confinement amounts to punishment, the Court "determines whether a condition of confinement is reasonably related to a legitimate governmental objective; if it is not, we may infer 'that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees *qua* detainees.'" *E. D. v. Sharkey*, 928 F.3d 299, 307 (3d Cir. 2019) (quoting *Hubbard*, 399 F.3d at 232) (emphasis in original). The court must "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020).

Here, the undisputed facts show Dudley was in this cell for a "legitimate purpose" – security risk status – and not for punishment. Dudley was originally placed in DHU West Cell 25 on February 11, 2022 after he was put on security risk

for refusing medical treatment.  ECF No. 53 at 12-13.  *See also Mestre v. Wagner*, No. CIV.A. 11-2480, 2012 WL 300724, at *6 (E.D. Pa. Jan. 31, 2012), *aff'd*, 488 F. App'x 648 (3d Cir. 2012) (special housing for plaintiff designated as security risk was for security purposes and therefore did not amount to conditions of confinement claim).  Defendants Appley, Turek, and Patterson submitted sworn statements saying that "DHU West Cell 25 cell in which Dudley was placed . . . was the available cell at the time" and that he was placed in it for no "specific reasons other than it was [an] available cell for an inmate who was designated a security risk." ECF No. 53-1 at 3, 7, 11.  *See also Pierre v. Richards*, No. 4:23-CV-02044, 2024 WL 643294, at *4 (M.D. Pa. Feb. 15, 2024) (dismissing conditions of confinement claim for unsanitary cell at motion to dismiss stage, in part because plaintiff did not allege alternative cells were available, so it was not for illegitimate purpose).

Dudley does not show that Defendants' treatment was "excessive in relation" to his security risk status.  *Hope*, 972 at 326.  First, Dudley does not show his cell was colder than anyone else's on the block or that they were singling him out.  The Cambria County Maintenance Department Supervisor, Brian Risko, explained in an affidavit that the prison heating system is controlled by software, which "does not have the ability to control temperature in a single cell, only an entire housing unit or zone within the facility."  ECF No. 51-3 at 2.

Second, Defendants provided Dudley with clothing and blankets appropriate for his security classification.  While Dudley argues that "[d]eprivation of clothing and bedding bear no relationship to security measure[s]," ECF No. 57 at 2-3, he

does not show he was deprived of adequate clothing or bedding. It is undisputed Dudley was given a paper security risk gown because of his security classification, that Dudley was given a mattress and blanket night, and that after three days he was given prison-issued shoes, three pairs of underwear, and three pairs of socks. ECF No. 51-3. at 13-16. "While 'prison officials must ensure that inmates receive adequate . . . clothing' . . . correctional staff retain broad discretion in determining what garb is appropriate for inmates." *Ball v. Cooper*, No. 1:11-CV-1833, 2012 WL 2389763, at *7 (M.D. Pa. June 1, 2012), *report and recommendation adopted*, No. 1:11-CV-1833, 2012 WL 2389760 (M.D. Pa. June 25, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). *See also Meastre*, 2012 WL 300724, at *6 ("[Plaintiff] may disagree that the dietary and mattress restrictions were necessary to protect him from himself and other detainees, but '[s]uch considerations are . . . within the province and professional expertise of corrections officials'") (quoting *Bell*, 441 U.S. at 547).

Accordingly, since it is undisputed Defendants placed Dudley in Cell DHU West 25 for a legitimate, non-pecuniary purpose for a total of six days, provided him with clothing and bedding appropriate for his security risk classification, and could only control the heating on the entire unit, Dudley's Fourteenth Amendment conditions of confinement claim fails. Therefore, summary judgment is granted for Defendants on this claim as well.

### iii. Access to Courts

Defendants next move for summary judgment on Dudley's failure to access courts claim against Defendant Smick. ECF No. 52 at 10. In his Amended Complaint, Dudley alleges he was served with a forfeiture and condemnation petition from the Attorney General of Allentown, PA, seeking to enforce a $13,780 civil forfeiture. ECF No. 17 at 8. He alleges Defendant Smick violated his access to the courts because Smick told him he could use the phone either to contact his family or a lawyer referral service, not both. *Id.* At the Motion to Dismiss stage, this Court interpreted this claim as an access-to-courts claim. ECF No. 32 at 3. Defendants argue summary judgment should be granted in their favor as Dudley did not establish he was denied access to counsel. ECF No. 52 at 10-11.[6]

Under the First and Fourteenth Amendments of the United States Constitution, convicted prisoners and pretrial detainees retain a right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343 (1996); *see also Prater v. City of Phila.*, 542 F. App'x 135, 136-37 (3d Cir. 2013) (per curiam). To state a claim for denial of access to courts, a pretrial detainee "must show that he 'suffered an actual injury.'" *Hernandez v. Delaware Cnty. Of Pennsylvania*, No. 22-CV-4187, 2023 WL 349254, at *6 (E.D. Pa. Jan. 20, 2023) (quoting *Prater*, 542 F. App'x at 137). "A detainee states an actual injury by alleging 'that a nonfrivolous and arguable claim was lost

---

[6] Defendants also argue Dudley's claim fails because a civil forfeiture action is not one of the two types of cases the Supreme Court has outlined for access to court claims under the Eighth Amendment. ECF No. 52 at 10 (citing *Lewis v. Casey*, 518 U.S. 343, 354-55 (1996)). However, the Third Circuit Court of Appeals has not extended *Lewis*' categorization to pretrial detainee's claims under the Fourteenth Amendment. *Prater*, 542 F. App'x at 138 ("[B]ecause [plaintiff] had not been convicted, we do not believe such a limitation is applicable").

because of the denial of access to the courts.'" *Id.* (quoting *Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010)). *See also Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014) ("[T]o sufficiently plead an access-to-courts claim … a non-prisoner must plead that 'official acts … may allegedly have caused the loss … of a meritorious case.'") (quoting *Christopher v. Harbury*, 536 U.S. 403, 416 (2002)).

Dudley filed a grievance on April 27, 2022, saying Defendant Smick told him he could either call his family or a lawyer referral service regarding the forfeiture notice, not both. In the grievance, he noted his inability to call the lawyer referral service despite his request slips and conversation with "Counselors." ECF No. 51-1 at 39. In the grievance, he says the initial discussion took place on February 24, 2022, and has remained an issue since (as of the date of the grievance April 27, 2022). *Id.*[7] Dudley, however, does not provide any additional information in his Opposition Brief, for example how often he asked to make this call, whether he asked again after he received a response to the grievance, or whether he asked anyone besides Defendant Smick to make this call. It is undisputed that Dudley did not file any additional grievances on this matter.

Even if Defendant Smick did tell Dudley on February 24, 2022 that he could choose between calling his family and the lawyer referral service, Dudley's access-

---

[7]    The Parties also do not dispute Defendant Corey Fox, as the Grievance Coordinator, requested Smick respond to Dudley's grievance, Defendant Smick responded saying that Dudley had "never mentioned this issue to [him]" and Smick's response was relayed to Dudley. ECF No. 53 at 18 (citing ECF No. 51-1 at 39-42). Defendant Corey Fox further added that the grievance was discussed with Counselor Smick and that he "would address it with [Dudley] when he comes back to the block." ECF 51-1 at 42. The issue was marked "resolved" and no further grievances were received from Dudley on this issue thereafter. *Id.*

to-court claim still fails because he does not show Defendant Smick's actions caused him an actual injury.  Dudley had a myriad of other ways to contact the lawyer referral service and the Allentown Attorney General's Office.  *Hernandez*, 2023 WL 349254, at *6 ("A detainee states an actual injury by alleging . . . [a] claim was lost *because of* the denial of access to the courts") (emphasis added).

It is undisputed that Dudley had an approved list of people he could call and that he was free to update that list.  *See* ECF No. 53 at ¶ 24.  Dudley specifically says in his Opposition brief: "I could have added the [lawyer referral service] number to my phone list."  ECF No. 57 at 2.[8]  Dudley also does not dispute that:

- Dudley could make telephone calls during this time.  ECF No. 53 at ¶ 25.
- Dudley did not attempt to add either the lawyer referral service or the Allentown Attorney General's Office number to his approved call list.  ECF No. 57 at 2.
- Neither the lawyer referral service nor the Allentown Attorney General's Office was blocked at any time from his call list.  ECF No. 51-1 at 4.
- Dudley could receive and send mail.  ECF No. 53 at ¶ 26.
- Dudley did not send any mail to either the lawyer referral service or to the Allentown Attorney General's Office.  ECF No. 51-1 at 30-36.
- Dudley did not send the forfeiture documents to anyone, including his family.  ECF No. 53 at ¶ 27.

Dudley had alternative methods of handling his forfeiture action – beginning with adding the telephone number of the Allentown Attorney General's Office and the lawyer referral service to his approved call list and calling them – but he did not do so.  *Burns v. Cole*, No. CIV A 08-4807(RMB), 2008 WL 5136958, at *10 (D.N.J. Dec. 4, 2008) (dismissing access to court claim about ability to call lawyer because

---

[8]    Instead, he argues that "[i]f it was that easy, Counselor Smick should have stated this in his response to [his] grievance."  ECF No. 57 at 2.

plaintiff did not show "lack of alternative means of communications"); *Randall v. Cnty. Of Berks, Pennsylvania,* No. CV 14-5091, 2015 WL 5027542, at *17 (E.D. Pa. Aug. 24, 2015) ("[A] pretrial detainee does not have unfettered telephone access, even to communicate with legal counsel").  Granted, those agencies may or may not have accepted a collect call from an inmate, yet Dudley did not even attempt to add their numbers to his list to make such calls so whether such calls would be accepted is unknown.  Nor did he send them mail, have a family member or friend contact them on his behalf, or request another staff member provide him access to call those agencies.  Lastly, he sought no further grievances about his alleged inability to make such a call after the initial grievance was marked "resolved."

Accordingly, Dudley has failed to show Defendant Smick's statement(s) was the actual cause of his injuries. *Wilkins v. Rozum*, No. CIV.A.06-203J, 2008 WL 3833418, at *11 (W.D. Pa. Aug. 14, 2008) (dismissing access to court claim because did "offer[ed] no proof" that denial of access to library impaired his ability to meet deadline).  Defendants' Motion for Summary Judgment on Dudley's access to court claim is granted.[9]

## VI.    Conclusion

Therefore, for the reasons set forth herein, the Court finds that no genuine issues of material fact exist, and Defendants' Motion shall be GRANTED.  An appropriate Order will be issued.

---

[9]    Because the undisputed facts do not support a constitutional violation, the Court need not address Defendants' argument about qualified immunity and whether the right was clearly established at the time of the alleged misconduct. *Wright v. City of Philadelphia*, 409 F.3d 595, 600 (3d Cir. 2005) ("[I]f no constitutional violation is found, a court need not address whether a reasonable officer would have known he or she was violating a clearly established right.").

DATED this 26th day of March, 2025.

BY THE COURT:


s/Christopher B. Brown
United States Magistrate Judge


CC:  CLINTON DEONARD DUDLEY
     70247-509
     FCI ALLENWOOD MEDIUM
     FEDERAL CORRECTIONAL INSTITUTION
     P.O. BOX 2000
     WHITE DEER, PA 17887

     All counsel of record, *via ECF*